**R. M. HOLLINGSHEAD CORPORATION v.
UNITED STATES.**

No. 50123.

United States Court of Claims.

April 7, 1953.

Scott P. Crampton, Washington, D. C., for plaintiff. William J. Demick, Washington, D. C., on the brief.

Gilbert E. Andrews, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and MADDEN, HOWELL, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

The Government has made a motion to dismiss the plaintiff's petition on the ground that it fails to state a cause of action. We summarize the allegations of the petition. The plaintiff was on February 3, 1948, awarded a contract by the United States Public Health Service, Federal Security Agency, for the supply of some 108,000 gallons of 25 percent DDT Concentrate in 5-gallon metal drums. The contract contained the following provisions:

"The formula shall consist of 25% (weight-volume basis) technical grade DDT dissolved in a suitable solvent with an emulsifying agent added so that the entire concentrate is a clear, stable liquid which will not become cloudy or otherwise deteriorate upon

standing for a period of one year at temperatures as low as 32° F.[1] and as high as 120° F.

\* \* \* \* \* \*

"The solvent shall conform to the following requirements: ·

\* \* \* \* \* \*

"(g) No observable staining shall result on surfaces sprayed with a 10 percent DDT emulsion applied at the rate of 400 milligrams per square foot."

After 22,815 gallons of the DDT Concentrate had been delivered by the plaintiff to the Government it was found that the liquid, after being stored for a period of time, lost its clear color. The Government thereupon insisted that the plaintiff had failed to comply with the contract, refused to pay the plaintiff $7,605 which would otherwise have been due, and demanded repayment of $20,823.15 already paid to the plaintiff. The plaintiff thereupon delivered a certified check for $20,000 to the General Accounting Office to be held in escrow pending the disposition of the plaintiff's claim. The claim was decided adversely to the plaintiff and the check was, presumably, cashed. The Government credited the plaintiff with $1,150, the amount realized from the resale of the allegedly defective DDT. The plaintiff sues for the contract price of the DDT, $28,428.15. It alleges that the DDT Concentrate was properly prepared.

At the time the contract here involved was made, DDT Concentrate was a relatively new product, and neither the plaintiff nor the Government knew that it was impossible to store DDT Concentrate in the metal containers prescribed in the contract without a resulting loss of its clear color. After its experience with this contract, the Government has not bought any DDT Concentrate to be shipped in metal containers. It acquires the constituents of the mixture separately, and mixes them only as it needs to use them.

The plaintiff urges that, because of a mutual mistake as to a material fact, the parties made a contract which was impossible of performance. It says that, since the Government prepared the contract which specified that the liquid should be shipped in metal containers, it implicitly represented that if the specifications were complied with, satisfactory performance would result. We think that, in the instant situation, that is a correct statement. It is easy, of course, to imagine a situation where a person has in mind the manufacture of an object, but no special knowledge of the process of its manufacture, and he places an order with a factory to manufacture the specified article out of specified materials. If the manufacturer knows, or, perhaps, from his experience should know, that the desired article cannot be made from the specified materials, he has no right to make a useless thing and charge the customer for it. But we think that when the Government, through one of its important agencies, orders the production of a specified thing by specified means, it would be a rare instance when the supplier could reasonably be expected to investigate for himself whether compliance with the specifications would, in fact, produce the desired result. See Spearin v. United States, 51 Ct.Cl. 155, 161, affirmed 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Steel Products Engineering Co. v. United States, 71 Ct.Cl. 457, 472; Whitlock Coil Pipe Co. v. United States, 72 Ct.Cl. 473. The same view is expressed by the Comptroller General in Comp.Gen. Dec. B–75619, August 10, 1948.

We see no justification for throwing upon the plaintiff a loss which is a direct result of faulty specifications promulgated by the Government.

The Government's motion to dismiss the plaintiff's petition is denied.

It is so ordered.

---

1. For testing purposes the concentrate will be considered as stable if upon standing for 48 hours at 32° F. no clouding or precipitating of the DDT is observed.