In The Matter Of WORLD SKATING CENTER, INC., Debtor.

ENFIELD TRUST ASSOCIATES, INC., Movant,

v.

WORLD SKATING CENTER, INC., Respondent.

Bankruptcy No. 2–89–00017.

United States Bankruptcy Court, D. Connecticut.

May 24, 1989.

Barry K. Stevens, Harlow, Knott, Adams & Friedman, P.C., Stratford, Conn., for Enfield Trust Associates, Inc.

Mark V. Oppenheimer, Oppenheimer, Marchak, Leiss & Early, Newtown, Conn., for debtor-in-possession.

MEMORANDUM OF DECISION RE: MOTION FOR RELIEF FROM STAY FILED BY ENFIELD TRUST ASSOCIATES, INC. AND MOTION TO ASSUME LEASE FILED BY DEBTOR–IN–POSSESSION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

In these jointly-heard contested matters, World Skating Center, Inc., the debtor-in-possession (debtor), seeks court approval for its assumption of an allegedly unexpired lease presently in default, and Enfield Trust Associates, Inc., the landlord, seeks relief from the automatic stay to continue its state-court proceeding to gain possession of the involved premises. The facts found, relevant to the court's conclusions, follow.

### II.

The debtor, the operator of a roller-skating rink on premises located in Enfield, Connecticut, had, on June 22, 1987, entered into a ten-year net lease with the landlord's predecessor, Thompsonville Realty Corp. The debtor covenanted in the lease to pay a minimum monthly rental of $3,166.67,

maintain comprehensive property and liability insurance on the premises, and pay as additional rent all town assessments and taxes levied against the property.

When the landlord acquired the property from Thompsonville Realty Corp. in November 1988, the debtor was six months in arrears on the minimum rent, and had neither maintained the required insurance nor paid the town taxes of $8,974.68 due in July 1988. The landlord, on December 6, 1988, served a notice to quit possession on the debtor, based upon the nonpayment of rent. On December 31, 1988, the landlord started a summary process action in state court to gain possession of the premises, which action was stayed when the debtor filed a chapter 11 petition on January 6, 1989. The debtor's chapter 11 schedules disclosed assets with a value of $1,500.00 and total liabilities of $93,875.00, including a conceded lease arrearage of $39,889.63.

The debtor, on February 28, 1989, filed a motion seeking court approval for the assumption of the Enfield lease. The debtor alleged that "[a]lthough the debtor in possession is in arrears with the past payments, the debtor in possession is prepared to cure the arrearage in total, with an appropriate rate of interest on all amounts outstanding."

The landlord, on March 6, 1989, filed its motion requesting relief from the automatic stay to permit it to proceed to gain possession of the premises.

At the hearing held on the two motions, Daniel Wortman, the debtor's president and sole stockholder, testified that the arrearage under the lease has increased by $8,974.68 for town taxes payable in January 1989. He asserted that the debtor intended to cure the lease arrearage by paying $50,000.00 in cash to the landlord, with any balance due to be paid over time. Wortman acknowledged the debtor presently did not have the $50,000.00, but that the debtor would secure these funds from him when he placed a second mortgage on his home, which he valued at $250,000.00. Wortman stated there was an existing first mortgage on the home for $160,000.00, and that the debtor pays him a weekly salary of $600.00. He conceded that to the date of the trial, he had not yet applied to any lender for the $50,000.00 loan. If he failed to receive the loan, Wortman contended that the debtor would pay off the lease arrearage to the landlord over a three-year period. Wortman claimed that the debtor's business had become profitable since the filing of the bankruptcy petition.

### III.

Bankruptcy Code § 365(b)(1) provides that when there has been a default in an unexpired lease, a debtor-in-possession may not assume the lease unless it (A) cures or provides adequate assurance that it will promptly cure the default, (B) compensates or provides adequate assurance that it will promptly compensate other parties to the lease for pecuniary losses, and (C) provides adequate assurance of future performance under the lease. 11 U.S.C.A. § 365(b)(1) (West Supp.1989).

To the extent that the debtor claims the right to assume the lease by curing all lease defaults through a cash payment to the landlord, the debtor has failed to establish the availability of the cash. Wortman's testimony as to his expectation of supplying the money to the debtor through the placement of a second mortgage on his home is not credible. Between February 28, 1989, when the debtor filed its motion, and April 7, 1989 when this hearing concluded, Wortman made no substantive effort to obtain the loan. As for the debtor curing the arrearage over a three-year period, the record will not support any finding by the court that this promise can constitute adequate assurance of a prompt cure. The debtor's present finances and past performance have been much too precarious to provide the adequate assurance to which the landlord, under § 365(b)(1), is entitled. "[T]he landlord should not be required to sit by and suffer further loss and delay should the debtor not live up to its projections." *In re R.H. Neil, Inc.*, 58 B.R. 969, 972 (Bankr.S.D.N.Y.1986). Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the land-

lord that it will receive the amount of the default. *Motor Truck and Trailer Co. v. Berkshire Chemical Haulers (In re Berkshire Chemical Haulers)*, 20 B.R. 454, 458–59 (Bankr.D.Mass.1982); *see In re Future Growth Enter.*, 61 B.R. 469 (Bankr.E. D.Pa.1986); *cf.* Epling, *Contractual Cure In Bankruptcy*, 61 Am.Bankr.L.J. 71, 74 (1987) (Although each case turns on its unique facts as to what constitutes "prompt" cure, "in the case of real estate leases ... courts will almost universally require that any pecuniary default be cured at or prior to the time the contract is assumed.").

It necessarily follows from the foregoing that the record made in this proceeding will also not support a finding that the debtor, for the purposes of § 365(b)(1)(C), has provided adequate assurance of its future performance under the lease.

### IV.

The debtor's motion for assumption of the lease is denied for failure of the debtor to satisfy the conditions of § 365(b)(1), and the landlord's motion for relief from the automatic stay is granted by modifying the stay to permit the landlord to proceed with its state-court summary process action.

It is

SO ORDERED.