### In the Matter of SILENT PARTNER, INC.

Civ. A. No. 90–1158.

United States District Court, E.D. Louisiana.

Aug. 22, 1990.

Thomas W. Tucker, New Orleans, La., for Silent Partner, Inc.

Eneid A. Francis, Asst. U.S. Atty., New Orleans, La., for U.S.

## MEMORANDUM OPINION

MENTZ, District Judge.

This action is before the court on appeal by the government of an order of the bankruptcy court allowing the debtor, Silent Partner, Inc., to assume a previously entered-into contract with the government.

FACTS

Silent Partner, Inc. (SPI) *entered into a* contract with the United States to supply fragmentation vests (frag vests) for the military. Contract 316 between SPI and the Defense Personnel Support Center (DPSC) obligated SPI to provide 72,000 frag vests over a period of two years at a rate of 3,030 frag vests per month. During a post-award conference held in February 1988, SPI raised a question about the specifications of the frag vests. Specifically, SPI questioned the Table of Operations, which outlined the steps SPI was to take in manufacturing the frag vests. SPI believed that the government was going to take steps to modify the contract in response. At the same meeting, the contracting officer determined that no production or quality problems were to be expected.

SPI had to submit its first test article under the contract as proof that SPI could produce the article in conformity with the government specifications. The first article was rejected due to problems with the pocket flaps. SPI resubmitted the first article and it was accepted. However, SPI produced the accepted first article in accordance with modifications it anticipated the government would be making. SPI did not comply with the government specifications as they existed at the time. SPI did not identify any problem with the production process nor did SPI tell the government of its failure to follow government specifications.

The mandatory first article vest was the only vest ever delivered by SPI. In July 1988, DPSC informed SPI that it was behind on its contract. SPI told DPSC that SPI was having problems with another government contract. As a result, SPI was facing financial problems that were hindering its ability to perform the contract for the frag vests. DPSC forbore to take action against SPI until the negotiations were complete on the other government contract. After negotiations were complete, the government issued a unilateral delivery schedule for the frag vests as SPI had failed to submit one.

On April 28, 1989, SPI filed for bankruptcy under chapter 11. After SPI missed the first revised delivery deadline of May 10, 1989, DPSC moved to terminate the contract for default. On July 13, 1989, the government filed a motion to lift the stay order imposed by the bankruptcy court so that it could terminate the contract with SPI. The motion was denied.

On September 11, 1989, the government filed a motion for an order directing the debtor to accept or reject the contract. SPI filed a motion to assume the contract and a hearing was held on January 24, 1990. The bankruptcy court granted SPI's motion to assume the contract with the proviso that SPI procure $75,000 in operat-

ing funds within thirty days. It is from this order that the government appeals.

## STANDARD OF REVIEW

■ On review of a decision of the bankruptcy court, the district court must follow Bankruptcy Rule 8013, which provides that "[f]indings of fact ... shall not be set aside unless clearly erroneous." Bank.R. 8013. Legal conclusions, though, receive independent, de novo review from the court. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir.1985).

## ANALYSIS

■ The main issue this court must determine is whether SPI had a right to assume or reject the contract under 11 U.S.C. § 365. Section 365(a) allows the debtor to assume any executory contract, subject to the court's approval. 11 U.S.C. § 365(a). If the debtor had defaulted on an executory contract, the debtor may not assume the contract unless the debtor assures a cure for the default, offers compensation for any pecuniary loss suffered by the other party, and provides adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(A–C). Because the contract had not been terminated, the contract between SPI and the government was still executory.

■ The bankruptcy court has determined that SPI was not in default of its contract. *See In the Matter of Silent Partner, Inc.,* Ch. 11 Case No. 89–01555B (E.D.La. filed Feb. 23, 1990). The bankruptcy court stated that "any delays in performing on the contract were due to failures on the part of the Government to review and respond to Debtor's requests for modifications of the contract specifications in a timely manner." *Id.* As this finding by the bankruptcy court was one of fact, the court will not alter it unless clearly erroneous. After reviewing the record, this court finds that the evidence does not support the bankruptcy court's determination.

The Federal Acquisition Regulations (FAR) provide that a government can terminate a contract if the contractor fails to "deliver the supplies or perform the service" within the time frame specified in the contract. Federal Acquisition Regulation 52.249–8(a)(1)(i). The government alleged in the bankruptcy hearing that SPI did not deliver the product within the specified time and thus, the government should have been allowed to terminate the contract for SPI's default. SPI alleged that their delay in performing was excusable as it was due to the government's failure to modify the contract specifications and its failure to provide a valid delivery schedule. However, according to Diane Zufle, the owner of SPI, SPI raised the issue of faulty specifications only once, at the post-award conference. SPI never requested a modification of the specifications. In its extensive correspondence with the government, SPI never mentioned faulty specifications as a cause of its failure to perform the contract in a timely manner. Even when SPI produced its approved first article, it did not inform the government that the garment was constructed in conformity with the anticipated modifications. The record contains no evidence that SPI ever began to construct the vests only to discover that a faulty specification made production impossible. SPI's problems in performing its contract were occurring before the production stage.

SPI continually alleged prior to the bankruptcy hearing that SPI's difficulties stemmed from financial problems caused by another government contract. SPI's correspondence with the government reveals SPI had credit problems with its suppliers, leading to difficulties in acquiring the materials needed to produce the frag vests. SPI's failure to perform was not due to anything other than its own inability to acquire the materials.

■ Even were SPI's allegation that it was awaiting a modification from the government well-founded, its failure to perform in anticipation of a modification was not. A contractor is under an obligation either to perform its contract in accordance with all specifications, even if the specifications are incorrect, or to request an equitable adjustment from the government. *See United States v. Spearin,* 248 U.S.

132, 39 S.Ct. 59, 63 L.Ed. 166 (1918); *R.M. Hollingshead Corp. v. United States*, 124 Ct.Cl. 681, 111 F.Supp. 285 (1953); *La Crosse Garment Mfg. Co. v. United States,* 193 Ct.Cl. 168, 432 F.2d 1377 (1970). SPI did neither.

SPI's argument that a valid delivery schedule was never established by the government is unfounded. The record reflects that both an original delivery schedule and a revised delivery schedule were established by the government. This court finds that SPI's failure to deliver the vests in conformity with the delivery schedule put SPI in default of its contract.

■ Because SPI was in default of its contract, it must meet certain stringent requirements in order to assume the contract under 11 U.S.C. § 365(b)(1). The debtor cannot assume the contract unless the debtor:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such a contract or lease.

11 U.S.C. § 365(b)(1). Although subparts (A) and (B) are also troublesome, the court finds that SPI has not met its subpart (C) obligation to adequately assure future performance such as to be permitted to assume the contract. Any finding by the bankruptcy court to the contrary was clearly erroneous based on the evidence presented.

SPI has admitted that in order to fulfill the contract, it will request certain changes in the contract. First, SPI would like to substitute a new weaver, Silent Partner Body Armor (Body Armor), for the kevlar.[1] However, the government would have to approve the new weaver, and because Body Armor is inexperienced at weaving, this step could create problems. One of the government's witnesses testified that before Body Armor could be substituted, the government would have to investigate Body Armor to ensure that Body Armor was able to weave the kevlar. SPI also intends to substitute other vendors for the original vendors—another change that the government would first have to approve. Furthermore, SPI has produced no evidence that all of its vendors have committed to providing SPI the necessary materials to produce the vests.

In addition, SPI is relying on progress payments from the government for operating capital. There is no guarantee that SPI will receive progress payments, however. Start-up capital is intended to come in part from the sale of a sewing machine. The sale has not been completed as far as can be told from the record nor was it made clear to the court that such a sale can easily be completed. And already a problem with future performance has come to the court's attention: the debtor disputes its responsibility for providing a new first article.

The procedure under FAR 9.303 is clear: a first article may be required even when a previous first article was submitted if subsequent changes have been made in the specifications or if production was discontinued for an extended period of time. Without a doubt, the two years between the start of the contract and the present constitutes an extended period of time. Also, a change was made in the product's specification after the first article was originally produced. It appears to this court that the government has the right under FAR 9.303 to require a new first article.

While an absolute guarantee of performance is not required under 11 U.S.C. § 365(b)(1)(C), more than the debtor's speculative plans are needed. *See Richmond Leasing Co. v. Capital Bank, N.A.,* 762

---

1. Kevlar is a polymide manufactured by E.I. Dupont Co. known for its outstanding strength and stability to high temperatures. Kevlar must be woven into yarn and then fabric before it can be used in the manufacturing process. Light in weight, it is used in the frag vest to stop metal fragments from grenades, mines, and mortar shells.

F.2d 1303, 1310. It appears to this court from the above facts that SPI's attempt to assume the contract was based on hoped-for happenings and not on the facts as they existed at the time of the assumption. Furthermore, the debtor is already maintaining that part of its future performance, the resubmission of a first article, is "ridiculous," even though well-founded in the FAR. Considering the above facts, the court finds that adequate assurances of future performance were not made.

Accordingly,

IT IS ORDERED that the bankruptcy court's finding that the debtor be allowed to assume the contract be REVERSED.