### In re WASHINGTON CAPITAL AVIATION & LEASING, Debtor.

**Bankruptcy No. 93–10629–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 16, 1993.

---

Alan Rosenblum, Rosenblum and Rosenblum, Alexandria, VA, Myron A. Bloom,

Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, PA, for ATA.

Joseph Manson, Fairfax, VA, for debtor.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case comes before the court on motion by Washington Capital Aviation & Leasing ("WCAL") as lessor to assume an aircraft lease with American Trucking Associations, Inc. ("ATA") as lessee. The ATA opposes debtor's motion and requests the lease be terminated. Hearing was held on May 20, 1993, and the court took the matter under advisement directing the parties to submit proposed findings of fact, conclusions of law, and memorandum of law simultaneously by June 8, 1993. For the reasons stated in this memorandum opinion the court denies debtor's motion to assume the lease.

### Findings of Fact

WCAL owns one Westwind II jet aircraft ("plane"), has a FAA Part 135 Certificate, and is generally engaged in the air transportation business. WCAL's sole shareholder and president is Dr. Nabil Asterbadi. The CIT Group/Equipment Financing, Inc. ("CIT") provided the financing for WCAL to acquire the plane and holds a properly perfected security interest in the plane. WCAL's debt service to CIT is approximately $24,000.00 per month, with an outstanding principal balance of approximately $2,184,950.00 as of May 14, 1993. *See* Debtor's Exhibit G.

On September 24, 1990, debtor entered into a 5-year Aircraft Lease Agreement ("lease") with ATA. The lease calls for ATA to pay WCAL a base usage fee of $41,000.00 per month plus certain expenses in return for WCAL providing at least 20 flight hours per month to ATA. Any unused flight hours during any month carry over to future months. WCAL pays for fuel, repairs, and pilot salaries. However, ATA has the right to approve pilots. The lease also provides that ATA "shall have first priority use of the Aircraft ... [and]

... Failure to provide such priority use shall be a material breach of the Lease." *See* Debtor's Exhibit C, ¶ 7. The lease additionally provides that ATA has the right to terminate the lease in the event that the debtor's principal, Dr. Nabil Asterbadi, should no longer control WCAL. *See* Debtor's Exhibit C, ¶ 18.3. The ATA lease was assigned to CIT by Assignment of Lease dated January 22, 1991, as additional security for the indebtedness owed by WCAL to CIT. *See* Debtor's Exhibit E.

The evidence shows that in July 1991 the debtor began having financial difficulties. In fact, the debtor's troubles prompted Dr. Asterbadi to request financing and advance lease payments from ATA on more than one occasion. In June 1992 ATA agreed to prepay the December 1992 lease payment at the request of Dr. Asterbadi. However, in August 1992 the debtor's financial difficulties escalated to the point where it was unable to make the plane available to ATA. The debtor was unable to pay the bill of a maintenance facility which refused to release the plane until its bill was paid.

By December 1992 the debtor's situation seems to have worsened. The debtor was apparently in default on its obligations to CIT because on December 15, 1992, CIT gave written notice to ATA that all future lease payments should be made directly to CIT. In January 1993 Dr. Asterbadi again requested ATA advance future lease payments but ATA refused.

In early February 1993 WCAL was again unable to pay the bill of a maintenance facility that had performed scheduled maintenance on the plane. Accordingly, the plane was not available for ATA's use on a trip scheduled for February 10, 1993. ATA then threatened to terminate the lease if the debtor could not promptly cure this default. On February 12, 1993, WCAL filed its chapter 11 bankruptcy petition.

Postpetition debtor again failed to provide the plane for ATA to use on trips scheduled for February 16, and 18, 1993, because the maintenance facility had still not released the plane. Because the debtor had insufficient funds with which to pay the bill the debtor granted the maintenance

facility a super-priority lien on the plane in order to get the plane released.

It was not until March 2, 1993, that the debtor informed ATA the plane was available for use and that debtor had approximately $10,000.00 available to pay for fuel. However, ATA had already made other arrangements and refused to use the plane. ATA also expressed concern that $10,000.00 was insufficient to pay for the direct costs of operation associated with ATA's scheduled trips in March 1993.

Since March 1993, ATA has continually refused to use debtor's plane and has been placing the monthly lease payments in escrow pending this court's determination of the controversy. However, ATA has withheld $23,428.57 from the scheduled $41,000.00 March 1993 lease payment because ATA asserts this amount represents service paid for but not received in February 1993. ATA has placed the $17,571.43 balance of the March payment in escrow.

At hearing on debtor's motion to assume the lease debtor presented two alternative proposals. The first proposal involves WCAL assuming the ATA lease and Dr. Asterbadi paying $13,000.00 to cure past defaults. However, ATA believes a $23,428.57 refund is required to cure past defaults because this amount represents flight hours paid for but not received in February 1993.

Additionally, Dr. Asterbadi testified that he would be able to place $25,000.00 in escrow 60 days hence and another $25,000.00 in escrow 60 days thereafter as adequate assurance of future performance by the debtor. Dr. Asterbadi testified that he believed the source of these funds would be his medical practice or family members. To corroborate his financial condition Dr. Asterbadi submitted a brief compilation of financial condition that in some respects departed from generally accepted accounting principles. See ATA Exhibit 16.

Debtor's first proposal would also require ATA to post a security deposit of $41,000.00 which is not called for under the lease.

Dr. Asterbadi also testified that in order to break even the debtor would have to charter the plane an additional 14 hours per month above the 20 hours provided for in the ATA lease. If the debtor is unable to do this it will lose as much as $6,700.00 per month due to the costs of operating the plane. See ATA Exhibit 17. Dr. Asterbadi testified that he believes the charter market is rebounding and that an additional 14 hours per month of charter flights is attainable.

Debtor's second and preferred proposal is to assume and then assign the ATA lease to another company engaged in the aircraft charter and management business, Airborne, Inc. ("Airborne"). The structure of the transaction would be for Airborne to purchase the stock of WCAL thereby obtaining the FAA Part 135 Certificate and the right to service the ATA lease. The plane itself would be transferred to a new corporation controlled by Dr. Asterbadi. Airborne would then be responsible for servicing the ATA lease and making the debt service payments to CIT. Dr. Asterbadi would also be required to make various payments to Airborne over a two year period totaling $44,000.00.

However, before Airborne will go forward with the transaction ATA must agree to accept a substitute plane if the debtor's Westwind II happens to be committed under a prior charter. A representative from ATA testified that ATA would be unwilling to accept this modification of the lease.

Also, Airborne would require CIT to accept different treatment under the terms of its security arrangement before Airborne would be willing to go forward. The current security arrangement between debtor and CIT calls for the debtor to pay CIT $400.00 per hour for every flight hour over 20 hours per month the plane is flown. Airborne proposes to substantially reduce this payment. However, as of the date of hearing no agreement between Airborne and CIT had been reached on this modification. Rather, a representative from CIT testified that an agreement is unlikely. He also expressed concern about the financial condition of Airborne and indicated that CIT would not consent to terms being offered by Airborne. In fact, the CIT repre-

sentative testified that CIT wishes to proceed with its own motion for relief from the automatic stay so it can foreclose on the plane.

### Discussion and Conclusions of Law

Debtor seeks to assume an unexpired lease with ATA pursuant to 11 U.S.C. § 365(b). Alternatively, debtor seeks to assume and assign the unexpired lease with ATA to Airborne, Inc., pursuant to 11 U.S.C. § 365(f). The court will address each proposal separately.

### 11 U.S.C. § 365(b).

■■■■ Section 365 contains a number of restrictions on the power of a debtor in possession to assume an unexpired lease. Section 365(b) provides that if defaults have occurred in the lease, the debtor in possession must cure the defaults [1] or provide adequate assurance of prompt cure and must provide adequate assurance of future performance under the lease. *See* 11 U.S.C. § 365(b)(1)(A)–(C). When a debtor in possession assumes an unexpired lease, it takes the lease *cum onere,* that is, subject to existing burdens. *See Dept. of Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1472 (4th Cir.1990); *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir.1985); *In re Clavis Smith Building, Inc.,* 112 B.R. 768, 770 (Bankr.E.D.Va.1990); *Tidewater Memorial Hospital, Inc. v. Bowen (In re Tidewater Memorial Hospital),* 106 B.R. 876, 877 (Bankr.E.D.Va.1989). In other words, a debtor may not assume the favorable aspects of an unexpired lease and reject the unfavorable aspects of the same lease. *See Carolina Parachute Corp.,* 907 F.2d at 1472.

Upon assumption of a lease, the obligation becomes one of the estate, and the debtor is required to perform. Any subsequent breach will no longer be a prepetition breach and any damages that result will be entitled to administrative expense priority if the breach occurs during bankruptcy. *See e.g., Texaco, Inc. v. Louisiana Land and Exploration Co.,* 136 B.R. 658, 663 (M.D.La.1992) (citing 2 Collier On Bankruptcy § 365.03 (15th ed. 1991)); *R and O Elevator Company v. Harmon (In re R and O Elevator Company),* 93 B.R. 667, 672 (D.Minn.1988) (citing *In re Coast Trading Co.,* 744 F.2d 686, 692–93 (9th Cir.1984)). Accordingly, in deciding whether or not to allow a debtor to assume a lease the court must not only consider the impact on the other party to the lease but also potential detriment to unsecured creditors who would be subordinated to the payment of damages resulting from any postassumption breaches. In effect this is part and parcel of the traditional business judgment test used to scrutinize a motion to assume an unexpired lease by a debtor in possession. *See* 1 David G. Epstein, Bankruptcy § 5–8 (1992) (citing *National Labor Relations Board v. Bildisco and Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984)).

This case presents a unique circumstance. Here the debtor in possession is the *lessor* of an airplane and seeks to assume a lease to provide air transportation services to ATA. Ordinarily, the debtor in possession is the *lessee* seeking to assume a lease of real property or equipment and the focus of the court's inquiry is on the financial capacity of the debtor to cure past due lease payments and assure future lease payments.[2] In this case the court must

---

1. The cure provisions of § 365(b)(1) do not apply to what are commonly referred to as *ipso facto* clauses, i.e., clauses that allow termination of the contract in the event of insolvency or the filing of a bankruptcy petition. Section 365(e) also makes these clauses unenforceable in bankruptcy.

2. Congress did specifically addressed the situation in which the debtor is the *lessor of real property.* Pursuant to § 365(h) if the trustee rejects a lease under which the debtor is the *lessor,* the lessee may treat such lease as terminated by such rejection "or, in the alternative, the lessee ... may remain in possession of the leasehold ... under any lease ... for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law." 11 U.S.C. § 365(h). Therefore, when the debtor is the lessor of real property § 365 operates so that the tenant lessee will not be deprived of his estate for the term for which he bargained.

analyze the debtor's ability to perform under the lease which imposes monetary as well as nonmonetary duties on the debtor. *See e.g., In re Rachels Industries, Inc.,* 109 B.R. 797, 803 (Bankr.W.D.Tenn.1990); *In re Carterhouse, Inc.,* 94 B.R. 271, 273 (Bankr.D.Conn.1988).

▪ Initially, the court notes that the debtor's motion must fail on its face because it proposes to modify the terms of the lease by requiring ATA to post a security deposit of $41,000.00. This is an obvious attempt by the debtor to effectively force ATA to provide financing for the debtor's reorganization. However, the assumption of an unexpired lease pursuant to § 365 does not augment a debtor's rights under the contractual agreement other than to permit a debtor to cure defaults, ignore *ipso facto* clauses, and resume its contractual obligations if the statutory tests are met. *See e.g., In re Jackson,* 105 B.R. 418, 419 (Bankr.S.D.Ohio 1989). Section 365 does not authorize the debtor to modify ATA's rights under the lease by requiring a security deposit not called for under the lease, and the debtor has not cited any authority to support its attempt to do so. Moreover, since no·expansion of either party's rights is intended by § 365 except as specified therein, this court's exercise of equity power pursuant to 11 U.S.C. § 105(a) to expand the debtor's rights would not be appropriate. *In re Jackson,* 105 B.R. 418, 419 (Bankr.S.D.Ohio 1989). Accordingly, even if the court was otherwise willing to allow the debtor to assume the ATA lease the debtor would not be permitted to modify the lease by requiring ATA to post a security deposit.

▪ As stated previously, before a debtor in possession is required to comply with the provisions of § 365(b)(1)(A)–(C) there must have been a default in the unexpired lease. In this case the debtor defaulted pre- and postpetition by not having the plane available for ATA's use. Accordingly, the debtor must comply with the "cure" and "adequate assurance" provisions of § 365 before assumption can be permitted. In the court's view the debtor has failed to establish that it has the ability to provide ATA with prompt and complete cure of previous lease defaults and adequate assurance of future performance.

▪ Section 365(b)(1)(A) requires the debtor in possession to cure pre- and post petition lease defaults. *See e.g., In re Rachels Industries, Inc.,* 109 B.R. 797, 811–12 (Bankr.W.D.Tenn.1990). This conclusion is clear from § 365(b)(1) which measures defaults as of the "time of assumption". *In re Rachels Industries, Inc.,* 109 B.R. at 812. Here the debtor's principal Dr. Nabil Asterbadi proposes to pay $13,000.00 on behalf of the debtor to cure pre- and post petition defaults. However, there is substantial question whether this amount is sufficient to cure the February 1993 defaults. ATA asserts that $41,000.00 of flight time was paid for in February of 1993, but only $17,571.43 worth of flight time was received. Accordingly, ATA asserts that a $23,428.57 refund is required for debtor to completely cure the February 1993 defaults. Because ATA was forced to pay for alternative transportation arrangements in February 1993, I conclude that a full refund of the flight time paid for but not received is required to completely cure past lease defaults and compensate ATA for any actual pecuniary loss suffered. Accordingly, the debtor's motion must be denied because the debtor proposes to pay only $13,000.00 to cure the pre- and postpetition lease defaults.

▪ Lastly, while an absolute guarantee of future performance is not required under § 365(b)(1)(C), more than the debtor's speculative plans are needed. *See Richmond Leasing, Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1310 (5th Cir.1985); *In the Matter of Silent Partner, Inc.,* 119 B.R. 95, 98 (E.D.La.1990); *Enfield Trust Associates, Inc. v. World Skating Center, Inc. (In re World Skating Center, Inc.),* 100 B.R. 147, 148–49 (Bankr.D.Conn.1989). Here Dr. Asterbadi proposes to deposit $25,000.00 from his personal funds in escrow 60 days hence and another $25,000.00 60 days thereafter as a means of providing adequate assurance of future performance by the debtor. However, Dr. Asterbadi is not proposing to personally guarantee the

debtor's obligations under the lease, and the only evidence presented on Dr. Asterbadi's financial condition was a brief compilation that did not conform to generally accepted accounting principles. Moreover, Dr. Asterbadi's testimony was unclear at best as to the source of the proposed cash infusion. Additionally, the evidence is uncontroverted that unless the debtor secures an additional 14 hours per month of charter flights the debtor would consistently lose as much as $6,700.00 a month. This would quickly erode any adequate assurance provided by the proposed cash infusion. Although Dr. Asterbadi testified that he believed the charter market was rebounding, the debtor has been able to secure only one charter flight postpetition. In sum, the court must conclude that the proposed cash infusion by Dr. Asterbadi is too speculative, insufficient and remote to provide adequate assurance of future performance as required by § 365(b)(1)(C).

In conclusion, the court finds that the debtor's proposal to assume the ATA fails to meet the statutory tests for assumption set out in § 365(b)(1).

*11 U.S.C. § 365(f).*

■ The debtor's second proposal is to assume the unexpired lease with ATA and then effectively assign the lease to an entity known as Airborne, Inc. This is the proposal favored by the debtor and its principal Dr. Nabil Asterbadi. However, this contemplated assignment is fundamentally flawed for two reasons: (1) the structure of the proposal is prohibited under the lease, and (2) Airborne is proposing to change the lease terms and the security arrangement with CIT.

Debtor's plan is to sell the stock of the debtor to Airborne and transfer the plane to a new corporation controlled by Dr. Asterbadi. As owner of debtor's stock, Airborne would thus own the ATA lease. Airborne also would manage the plane, service the lease, and be primarily responsible for making debt service payments to CIT. The major problem with debtor's proposal is that it violates ¶ 18.3 of the lease which states in pertinent part:

Lessee may terminate this Lease by giving thirty (30) days notice to Lessor if Dr. Nabil Asterbadi should no longer control Lessor ...

Debtor's Exhibit C, ¶ 20.

[F]or purposes of Section 18.3, "control" ... shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

Debtor's Exhibit C, ¶ 7.3.

■ This language in the lease precludes the debtor's proposal to sell the stock of the debtor to Airborne as a method of transferring the ATA lease. While it is true that § 365(e) & (f)(1) render unenforceable in bankruptcy *ipso facto* clauses and non-assignment clauses, in my view ¶ 18.3 of the ATA lease is neither an *ipso facto* clause nor a non-assignment clause in the context of the debtor's proposal. While it is clear that § 365(e)(1)(B) and (C) would not permit ATA to terminate the lease pursuant to ¶ 18.3 because the debtor filed bankruptcy, there is no provision in § 365 that would preclude ATA from terminating the lease pursuant to ¶ 18.3 when the debtor is proposing an actual transfer of ownership to an unrelated third party. Nor can the court find any policy rationale to deny ATA the benefit of its bargain in this context.

Similarly, there is no apparent restriction in the lease that would prevent the debtor from proposing a true assignment of the lease to a third party. In fact, ¶ 24 seems to contemplate potential assignments by making the lease "binding upon, the ... assigns of the parties." *See* Debtor's Exhibit C, ¶ 24. The problem here is that the debtor is not proposing a true assignment of the lease, but rather a stock sale that would in effect accomplish the same result. In short, debtor's proposal must fail because it runs afoul of ¶ 18.3 of the lease which I find enforceable under the present circumstances.

■ Airborne has also proposed certain conditions on its willingness to participate in debtor's proposal. Airborne proposes to

modify the lease with respect to ATA's rights under ¶ 7 of the lease. Under ¶ 7 of the lease ATA is entitled to first priority use of the debtor's Westwind II plane. Under Airborne's proposal ATA would have to accept a substitute plane if the debtor's plane is already under charter. ATA is unwilling to accept this modification, and Airborne is unwilling go forward without it. Also, Airborne is proposing to reduce payments owed to CIT under its current security arrangement. However, no agreement between Airborne and CIT has been reached. Accordingly, debtor's embryonic proposal is currently no more than speculation and conjecture.

■ Nevertheless, even if a consensus could be reached between the parties on the problems just discussed, the debtor has failed to establish the substantive basis for assignment of the lease to Airborne under § 365(f)(2). A debtor in possession may assign an unexpired lease of the debtor only if:

(A) the ... [debtor in possession] ... assumes such ... lease in accordance with the provisions of this section; *and*

(B) adequate assurance of future performance by the assignee of such ... lease is provided, whether or not there has been a default in such ... lease.[3]

*See* 11 U.S.C. § 365(f)(2) (emphasis added).

■ Section 365(f)(2)(A) and (B) are conjunctive prerequisites for assigning an unexpired lease. As such, this court's previous finding that the debtor has failed to meet the statutory test for assumption is fatal to the debtor's second proposal to assign the ATA lease to Airborne. Notwithstanding, even assuming arguendo that § 365(f)(2)(A) is satisfied, the evidence presented as to § 365(f)(2)(B) is woefully insufficient to establish adequate assurance of future performance by the proposed assignee, Airborne.

■ The only evidence presented as to Airborne's financial condition was a two-page "balance sheet and statement of income and retained earnings" for year ending December 31, 1992. *See* ATA's Exhibit 18. The exhibit indicates negative income from operations, negative net income, and negative retained earnings.[4] Given Airborne's doubtful financial outlook I find that the adequate assurance of future performance has not been shown.[5]

**3.** Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

**4.** Debtor explains this seemingly dubious financial picture by the fact that Airborne's principal is the recipient of the rent listed as an operating expense in the amount of $153,950.00. However, to the extent this may suggest Airborne's principal has a substantial net worth it would be irrelevant because Airborne's principal is not proposing to personally guarantee the obli-

gations under the lease. Moreover, Airborne's principal did not testify that the rent expense was bogus or anything other than a bona fide operating expense of Airborne. Accordingly, the fact that Airborne's landlord is Airborne's principal is irrelevant.

**5.** ATA also challenges the proposed assignment based on § 365(c) which provides that a debtor in possession may not assume an unexpired lease if applicable law excuses the other party from accepting performance from an entity other than the debtor and such party does not consent to such assignment. *See* 11 U.S.C. § 365(c)(1)(A). However, this exception to the general rule of assignability was intended by Congress to be applied narrowly to such contracts involving nondelegable duties under applicable nonbankruptcy law. *In re Taylor MFG, Inc.,* 6 B.R. 370, 372 (Bankr.N.D.Ga.1980) (citing legislative history). Arguably, § 365(c) applies only to contracts of such a nature as to be based upon personal services or skills, or upon personal trust or confidence. *In re Taylor MFG, Inc.,* 6 B.R. at 372 (citing 2 Collier on Bankruptcy ¶ 365.05, p. 365–33 (15th ed. 1980)). Although in my view the lease involved here is a hybrid between a straight commercial lease and a ser-

In summary, the court finds that debtor's proposals fail to meet the statutory test for assumption or assignment set forth in § 365.

A separate order will be entered denying debtor's motion.

vices contract base upon personal trust and confidence, I am unwilling to find that § 365(c) would preclude assignment under the appropriate circumstances.