**In re UNIQ SHOES CORPORATION, Debtor.**

No. 03–42420–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

Nov. 3, 2004.

Ana Hernandez–Yanks, Miami, FL, for Debtors.

Rodolfo Pittaluga, Holland & Knight, Miami, FL, for Creditor/Landlord.

### MEMORANDUM DECISION DENYING UNIQ SHOES CORPORATION MOTION TO ASSUME LEASE

A. JAY CRISTOL, Bankruptcy Judge.

**THIS MATTER** came before the Court on October 20, 2004 upon the Debtor, Uniq Shoes Corporation's (the "Debtor"), Motion to Assume Lease Agreement with Dolphin Mall Associates Limited Partnership (the "Motion"), and the Objection of Dolphin Mall Associates Limited Partnership (the "Dolphin Mall") and The Falls Shopping Center Associates, LLC ("The Falls Mall", together with the Dolphin Mall are hereafter collectively referred to as the "Landlords"). This Court, having reviewed the Motion, Objection, and record in this case, considered the arguments of counsel, and being otherwise fully advised in the premises enters the following decision upon the undisputed facts:

1. On November 17, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. Since the Petition Date, the Landlords maintained leases with the Debtor at two separate locations during which time the Debtor continued to operate its business as a debtor in possession pursuant to sections 1107(a)and 1108 of the Bankruptcy Code.

3. The Debtor and The Falls Mall were parties to a certain Lease Agreement for certain commercial space located in The Falls Shopping Mall (the "Falls Lease").

4. The Falls Lease has been rejected by the Debtor, resulting in a Rejection Damage Claim in the amount of $205,251.37, along with an administrative rent claim in the amount of $18,392.72.

5. The Debtor and the Dolphin Mall are parties to a certain Lease Agreement for certain commercial space located in The Dolphin Mall (the "Dolphin Mall Lease"). The Dolphin Mall Lease was amended and modified by the parties on February 18, 2003, and again on September 29, 2003.

6. The Debtor is currently in default under the Dolphin Mall Lease for, among other things, the failure to pay rent, which amounts presently total $70,356.70 for prepetition rent, and $51,452.52 for post-petition administrative rent ("Pre–Assumption Default"). In addition, pursuant to this Court's Order dated September 24, 2004, the Dolphin Mall was awarded legal fees and costs totaling $37,139.94 (the "Fees"). The Fees, together with the Pre–Assumption Default, comprise the sum of $158,949.16 (the "Cure Amounts") and constitute the cure amount due to the Dolphin Mall under 11 U.S.C. § 365(b).

7. On or about August 9, 2004, the Debtor filed with this Court its Disclosure

Statement ("Disclosure Statement") and Plan of Reorganization (the "Plan").

8. On or about August 22, 2004, the Debtor filed with this Court the underlying Motion which was the subject of the October 20, 2004 hearing and the subject of this Order.

9. On October 18, 2004, the Landlords filed their Objection to the Motion ("Landlords' Objection") and it too was the subject of the October 20, 2004 hearing and is the subject of this Order.

10. In the Debtor's Motion and Plan, the Debtor proposes to assume the Dolphin Mall Lease by paying the Cure Amounts over a cure period of forty-eight (48) months, or $3,311.44 per month, exclusive of the monthly rent due to the Dolphin Mall (presently $10,872.73/month) and additional interest of six percent (6%) offered by the Debtor.

11. The Landlords argue that a forty-eight (48) month cure period is not "prompt" within the meaning of 11 U.S.C. § 365, citing to the Debtor's Profit and Loss Statement (which the Debtor did not dispute or contest in pleadings or at the October 20, 2004 hearing) to demonstrate it had insufficient net income from April 2004 through August 2004 to cover the Dolphin Mall's monthly Cure Amount of $3,311.44, pay the $5,000.00 per month to creditors, and still continue to fund its business operations, as set forth in the Debtor's Second Amended Disclosure Statement.

12. The Landlords argue that the Debtor has struggled to make timely payments of rent under the Dolphin Mall Lease since the Filing Date, and these payments have excluded any payment of the proposed Cure Amounts.

### *ANALYSIS*

■ Section 365(b)(1) of the Code sets forth the requirements which a debtor must satisfy to assume a lease of unexpired real property and it specifically provides that:

"If there has been a default on an... unexpired lease of the debtor, the [debtor in possession] may not assume such... lease unless, at the time of assumption of such...lease, the [debtor in possession]—

(A) cures, or provides adequate assurance that the [debtor in possession] will promptly cure, such default;

(B) compensates, or provides adequate assurance that the [debtor in possession] will probably compensate, a party other than the debtor to such...lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such...lease."

The Bankruptcy Code fails to specifically define the terms "cure" or "prompt cure." Consequently, the definition of these terms has been left to the courts. Some courts have held that a "prompt cure" of a monetary default is one made at or about the time of a contract's or lease's assumption. *See In re Fisha Industries, Inc.,* 9 B.R. 834, 835 (Bankr.Nev.1981). *See also* Wolf–Smith & Connor, The Meaning of "Prompt and Adequate," *Journal of Bankruptcy Law and Practice,* Vol. 13, No. 4 at 96 (2004). One bankruptcy treatise states that in most cases, a period exceeding one year should not be considered prompt, even if the promised payments include interest:

"A *'prompt' cure should mean prompt.* A trustee or debtor in possession may not promptly cure a default by promising to pay the amount due because of the default over a period of years even though the promised payments would

include interest. A time period of up to one year is not necessarily in violation of the standard that the cure be prompt although *a period to cure extending beyond a year should not be considered prompt in most cases."*

*Norton Bankruptcy Law and Practice 2d* § 39:29 (2004)(emphasis added and citations omitted).

In Article 4.3 of the Plan, the Debtor proposes that it—

"... will assume the [Dolphin Mall] [L]ease and will cure the arrears in the [L]ease by making forty-eight (48) equal monthly payments, in addition to the current monthly rent payment. The cure will include the claim of attorneys' fees and costs. The [D]ebtor proposes to issue a promissory note in favor of [the Dolphin Mall] in the amount equal to the allowed claim to cure the [L]ease. The note will bear interest at the rate of six percent (6%) per annum and will be paid in forty-eight (48) equal monthly payments."

The Debtor contends that its proposed attempt to pay the Cure Amount over a four-year period constitutes and satisfies the "prompt cure" requirement of 11 U.S.C. § 365(b)(1), and cites several cases to support its position that a "prompt cure" could include a cure period longer than one year. For instance, in *In re Coors of North Mississippi, Inc.,* 27 B.R. 918(Bankr.N.D.Miss.1983), the court permitted a cure of a default over a three-year period. In doing so, the court considered the intervention of an assignee upon assumption and found that the assignee had a "reputation of outstanding financial strength and integrity" so that approval of the cure "may well result in a long-range business enterprise mutually profitable to each such assignee" and the lessor. The court found the three year period to be

appropriate in light of the prospective longevity of a successful business operation.

The cases cited by the Debtor persuade this Court that a "prompt cure" is not limited in time to immediate payment, or even limited to payment within a one year period, but the Court is not convinced that the four-year cure period proposed by the Debtor under the facts of this case qualifies as a "prompt" cure under 11 U.S.C. § 365(b)(1). The issue of promptness ultimately depends upon the facts and circumstances of each case. In *In re Berkshire Chemical Haulers, Inc.,* 20 B.R. 454 (Bankr.Mass.1982), the court, under the facts of that case, held that the proposed 18 month cure period was not "prompt" within the meaning of the Bankruptcy Code, but reasoned that in other circumstances, 18 months may be a "prompt" cure period:

... what is a prompt cure can often vary according to the circumstances of a given case.... For instance, a debtor with 90 years remaining on a 99 year lease, who proposed to cure its arrearage by monthly payments over an 18 month period, might be found to have offered adequate assurance of a prompt cure. On the other hand, where in this case the debtor's offer to cure its lease default over the next 18 months contemplates the final payment being made contemporaneously with the expiration of the lease term, I cannot say that any Court, under any circumstance, would find that such a proposal qualifies as a "prompt" cure under section 365(b)(1).

*Berkshire Chemical,* 20 B.R. at 458.

In determining whether a cure is "prompt", many courts consider several factors, including a debtor's past financial performance, any inequitable conduct engaged in by the non-debtor party, and the remaining term of a lease or relationship between the parties. *See In re Embers*

*86th Street, Inc.*, 184 B.R. 892, 900–901 (Bankr.S.D.N.Y.1995) (and cases cited therein); *In re R/P International Technologies, Inc.*, 57 B.R. 869 (Bankr.S.D.Ohio 1985). After consideration of the foregoing factors, as applicable in this case, the Court believes the Debtor's proposal to pay the Cure Amount over a forty-eight (48) month period is not "prompt". While the Court notes that the Debtor's financial performance (in terms of timely paying rent) has improved since the Filing Date, it has been a struggle and there have been months when it has not paid the rent on a timely basis. There is nothing in the form of substantive financial information contained in the Motion, Plan, Disclosure Statement, or in this record to corroborate the Debtor's contention that it will be able to make the Cure Amount over the proposed forty-eight (48) month period. Furthermore, the Landlords in this case have engaged in no inequitable conduct to justify a prolonged cure period. Their actions have not contributed to the Debtor's default and are not the cause for the Debtor's delay in curing the default. In addition, and perhaps of most import to the Court, is the fact that the original term of the Dolphin Mall Lease was for seven (7) years and is scheduled to terminate in five (5) years or approximately twelve (12) months after the Debtor expects to complete the payments of the Cure Amount. The proposed payment period for the cure is essentially co-extensive with the remaining life of the lease or, in any event, is not sufficiently less than the complete period of the relationship between the parties and is not therefore "prompt" cure. The Court cannot conclude, under the facts of this case, that a forty-eight (48) month time period to pay-off the Cure Amount constitutes a "prompt" cure when approximately sixty (60) months remain on the Dolphin Mall Lease.

The Court is also not satisfied that there is adequate assurance that any cure will be effected by the Debtor. As stated by the Court in *Embers*, adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so. *In re Embers 86th Street, Inc.*, 184 B.R. at 901; *In re R.H. Neil, Inc.*, 58 B.R. 969, 971 (Bankr. S.D.N.Y.1986); *Matter of World Skating Center, Inc.*, 100 B.R. 147, 148–149 (Bankr. D.Conn.1989) (adequate assurance requires a foundation that is not speculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default). There is nothing in the record which provides this Court with sufficient information so as to assure the Landlords that the Debtor will be able to make the payments required under the Plan, including the Cure Amount, that the Dolphin Mall is entitled to receive over the term of the Plan, if confirmed. The payment of the full amount of rent has often been untimely, and a review of the summary of the Debtor's Profit and Loss Statement reveals a poor financial history that provides no assurances that the Debtor will be able to consistently satisfy its Cure Amounts. *See In re JLS Shamus*, 179 B.R. 294, 296 (Bankr.M.D.Fla.1995) (court considered the dismal payment and operating history of that debtor in determining whether adequate assurance of prompt payment was provided). Accordingly, the Court rejects the Debtor's contention and concludes that the Debtor's current "cure" proposal fails to satisfy the "prompt cure" requirement of 11 U.S.C. § 365.

For all of the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Objection is **SUSTAINED** and the Debtor's Motion is **DENIED**. The Debtor is granted leave to re-file a motion to assume

lease agreement with Dolphin Mall Associates Limited Partnership which proposes a "prompt" cure period pursuant to 11 U.S.C. § 365 and as set forth in this opinion.